**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| **SECURITYPROFILING, LLC,** | |
| **Plaintiff,** | **C.A. No. 6:16-cv-01165-RWS-JDL** |
| **v.** | **JURY TRIAL DEMANDED** |
| **TREND MICRO AMERICA, INC. AND TREND MICRO INCORPORATED,** | |
| **Defendants.** | |

**MOTION AND OPENING BRIEF IN SUPPORT OF PLAINTIFF/COUNTER-
DEFENDANT SECURITYPROFILING, LLC'S MOTION TO DISMISS
COUNTERCLAIMS FOR FAILURE TO STATE A CLAIM
AND TO STRIKE DEFENSES**

**BUETHER JOE & CARPENTER, LLC**

Christopher M. Joe
Michael D. Ricketts
1700 Pacific Avenue
Suite 4750
Dallas, Texas 75201
Telephone:     (214) 466-1272
Facsimile:     (214) 635-1828

*Of Counsel:*

Sean T. O'Kelly
George Pazuniak
Daniel P. Murray
O'Kelly & Ernst, LLC
901 N. Market Street, Suite 1000
Wilmington, Delaware  19801
Telephone:     (302) 778-4000

Thomas F. Meagher
Alan Christopher Pattillo
Meagher Emanuel Laks Goldberg & Liao, LLP
One Palmer Square, Suite 325
Princeton, NJ 08542
Telephone:     (609) 454-3500

**ATTORNEYS FOR PLAINTIFF
SECURITYPROFILING, LLC**

# TABLE OF CONTENTS

**Page**

I.      FACTUAL BACKGROUND ........................................................................ 1

II.    LEGAL STANDARD ................................................................................. 2

     A.     RULE 8 PLEADING STANDARD ...................................................... 2

     B.     PLEADINGS NECESSARY TO STATE INEQUITABLE CONDUCT .............. 3

     C.     LAW GOVERNING MOTIONS TO STRIKE AFFIRMATIVE DEFENSES ..... 5

III.   ARGUMENT ........................................................................................... 5

     A.     THE INEQUITABLE CONDUIT CLAIMS ARE INSUFFICIENT .................... 5

           1.     Trend Micro Has Not Plausibly Pled, and Cannot Plead, "But For Materiality" of the Pre-Critical Date Version of SysUpdate[tm] ................. 6

           2.     Trend Micro Has Not Plausibly Pled, and Cannot Plead, "But For" Materiality of the Pre-Critical Date Version of LogBoss[tm] ...................... 9

           3.     Trend Micro Has Not Plausibly Pled, and Cannot Plead, "But For Materiality" of the Alleged Misleading Submission ............................... 10

           4.     Trend Micro Has Not Plausibly Pled, and Cannot Plead, "But For" Materiality of the Alleged Misleading Submission ................................. 11

           5.     Trend Micro Has Not Plausibly Pled, and Cannot Plead, "But For Materiality" or Intent to Deceive ........................................................... 11

     B.     TREND MICRO'S INVALIDITY CLAIMS ARE INSUFFICIENT ................. 12

     C.     TREND MICRO'S INFRINGEMENT CLAIMS ARE INSUFFICIENT ........... 13

     D.     TREND MICRO'S OTHER DEFENSES MUST BE STRICKEN ...................... 14

IV.   CONCLUSION ....................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..........................................................................................*passim*

*Barnes v. AT & T Pension Ben. Plan-Nonbargained Program,*
   718 F. Supp. 2d 1167, 1172 (N.D. Cal. 2010) ........................................................ 15

*Barry v. Medtronic, Inc.,*
   2016 WL 3583620 (E.D. Tex. 2016) ..................................................................... 4

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)........................................................................................ *passim*

*Bowlby v. City of Aberdeen,*
   681 F.3d 215 (5th Cir. 2012) ............................................................................ 2, 3

*Delano Farms Co. v. California Table Grape Comm'n,*
   655 F.3d 1337 (Fed. Cir. 2011).......................................................................... 4, 6

*EMC Corp. v. Zerto, Inc.,*
   2014 U.S. Dist. LEXIS 104520 (D. Del. 2014) .................................................... 12

*Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.,*
   2016 WL 1643315 (E.D. Tex. 2016) ..................................................................... 2

*Exergen Corp. v. Wal-Mart Stores,*
   575 F.3d 1312 (Fed. Cir. 2009)....................................................................... 4, 6, 7

*F.T.C. v. Think All Pub. L.L.C.,*
   564 F. Supp. 2d 663 (E.D. Tex. 2008)................................................................... 5

*Hayden v. United States,*
   147 F. Supp. 3d 1125 (D. Or. 2015) .............................................................. 14, 15

*HCRI TRS Acquirer, LLC v. Iwer,*
   708 F. Supp. 2d 687 (N.D. Ohio 2010)................................................................ 15

*Heller Fin., Inc. v. Midwhey Powder Co., Inc.,*
   883 F.2d 1286 (7th Cir. 1989) ............................................................................. 5

*In re Rosuvastatin Calcium Patent Litigation,*
   703 F.3d 511 (Fed. Cir. 2012).............................................................................. 4

*J & J Sports Prods., Inc. v. Angulo,*
   2015 WL 5020725 (E.D. Cal. 2015) ...................................................................... 15

*Kaiser Aluminum v. Chem. Sales, Inc.,*
   677 F.2d 1045 (5th Cir. 1982) ................................................................................ 5

*Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC,*
   594 F.3d 383 (5th Cir. 2010) .................................................................................. 3

*Medline Indus., Inc. v. C.R. Bard, Inc.,*
   2016 WL 5871501 (N.D. Ill. 2016) ......................................................................... 5

*Mosaid Techs. Inc. v. Freescale Semiconductor, Inc.,*
   2012 WL 12898419 (E.D. Tex. 2012) ..................................................................... 7

*Operating Eng'rs Local 324 Health Care Plan v. G&W Const. Co.,*
   783 F.3d 1045 (6th Cir. 2015) ................................................................................ 5

*Palmer v. Oakland Farms, Inc.,*
   2010 WL 2605179 (W.D. Va. 2010) ...................................................................... 15

*Pfizer Inc. v. Teva Pharmaceuticals USA, Inc.,*
   803 F. Supp.2d 409 (E.D. Va. 2011) ...................................................................... 4

*RAH Color Techs. LLC v. Ricoh USA Inc.,*
   2016 WL 3632720 (E.D. Pa. 2016) ....................................................................... 13

*Red Carpet Studios v. Midwest Trading Grp., Inc.,*
   2016 WL 5661681 (S.D. Ohio, 2016) ...................................................................... 7

*Senju Pharm. Co., Ltd v. Apotex, Inc.,*
   921 F. Supp. 2d 297 (D. Del. 2013) ................................................................... 6, 12

*Skinner v. Switzer,*
   562 U.S. 521 (2011) ................................................................................................ 2

*Tannerite Sports, LLC v. Jerent Enterprises, LLC,*
   2016 WL 1737740 ................................................................................................ 14

*Therasense, Inc. v. Becton, Dickinson & Co.,*
   649 F.3d 1276 (Fed. Cir. 2011) (*en banc*) ....................................... 3, 4, 5, 6, 7, 10

*Twin Rivers Engineering, Inc. v. Fieldpiece Instruments, Inc.,*
   Case 2:15-cv-01838-JRG .......................................................................... 5, 14, 16, 17

*Tyco Fire Prods. LP v. Victaulic Co.,*
   111 F. Supp. 2d 893 (E.D. Pa. 2011) ................................................................... 12

iii

*Vogel v. Huntington Oaks Del. Partners, LLC*,
     291 F.R.D. 438 (C.D. Cal. 2013) ......................................................................................... 15

*Woodfield v Bowman*,
     193 F.3d 354, 362 (5th Cir. 1999) ................................................................................. 5, 17

## STATUTES

Fed. R. Civ. P. Rule 8(a) ............................................................................................................ 2

Fed. R. Civ. P. Rule 9(b) ............................................................................................................ 4

Fed. R. Civ. P. Rule 12(b)(6) ..................................................................................................... 1

Fed. R. Civ. P. Rule 12(f) ....................................................................................................... 1, 5

Plaintiff/Counter-Defendant SecurityProfiling, LLC ("SecurityProfiling") moves the

Court, pursuant to Fed. R Civ. P. Rule 12(b)(6), for an order dismissing the First through

Thirteenth Declaratory Judgment Counterclaims filed by Defendants/Counter-Plaintiffs Trend

Micro America, Inc. and Trend Micro, Inc. ("Trend Micro") for failure to state a claim, and

under Fed. R. Civ. P. Rule 12(f) to strike the First, Second, Fourth, Sixth, Eighth through

Eleventh, and Eighteenth Defenses.

## I.  FACTUAL BACKGROUND

Plaintiff filed its Complaint on September 14, 2016, alleging that Trend Micro directly

and indirectly infringed claims of U.S. Patent Nos. 8,266,699 (the " '699 Patent"), 8,984,644 (the

" '644 Patent"), 9,100,431 (the " '431 Patent"), 9,117,069 (the " '069 Patent"), 9,118,708 (the "

'708 Patent"), and 9,225,686 (the " '686 Patent") (collectively "the Patents"). (D.I. 1).

On December 2, 2016, Defendants filed their Defendants/Counterclaim-Plaintiffs'

Answer and Counterclaims that included First through Thirteenth Counterclaims.  (D.I. 13

"Answer").

The Answer includes an Eighteenth Defense (¶¶ 61-115), and a Thirteenth Counterclaim

(¶¶ 162-218) which are identical.  In both cases, Trend Micro asserts that the inventors of the

Patents, Brett M. Oliphant and John P. Blignaut, and their counsel committed fraud in obtaining

the patents ("IC Claims").

The Answer also includes a Fourth Defense (¶¶ 51-52) and Counterclaims Second,

Fourth, Sixth, Eighth, Tenth and Twelfth.  The allegations of the Fourth Defense are identical to

the allegations of the Counterclaims, all of which are identical to each other, except each

Counterclaim relates to an individual Patent.  The Defense and Counterclaims contain the same

single allegation that:

one or more of the claims of the … Patent are invalid for failure to meet the
requirements of Title 35, United States Code, including but not limited to Sections
101, 102, 103, 112, and/or 116 thereof, and the rules, regulations, and laws
pertaining thereto.

(D.I. 13 at ¶¶ 51, 130, 136, 142, 148, 154, 160) ("Invalidity Claims").  The Invalidity Claims do

not identify any prior art or any facts in support of the invalidity assertions.

Finally, the Answer includes Counterclaims First, Third, Fifth, Seventh, Ninth and

Eleventh (D.I. 13 at ¶¶ 127-28, 133-34, 139-40, 145-46, 151-52, 157-58), all of which for the

individual Patent assert that "neither Trend Micro America nor Trend Micro, Inc. has infringed,

literally or by the doctrine of equivalents, any valid and enforceable claim of the … Patent, either

directly, contributorily, by inducement, jointly, or in any other manner." ("Infringement

Claims").  The Infringement Claims do not identify any basis for support of the non-

infringement assertions.  Plaintiff notes that the Defenses in Trend Micro's Answer jump from

the <u>Eleventh</u> Defense to the <u>Eighteenth</u> Defense.  (D.I. 13 at ¶¶60, 61).

## II.  LEGAL STANDARD

### A.     <u>RULE 8 PLEADING STANDARD</u>

Fed.R.Civ.P. Rule 8(a) provides that a claim must contain "a short and plain statement of

the claim showing that the pleader is entitled to relief."  "The question resolved on a Rule

12(b)(6) motion to dismiss is not whether the [pleader] will ultimately prevail, 'but whether [the]

complaint was sufficient to cross the federal court's threshold.'"  *Erfindergemeinschaft Uropep*

*GbR v. Eli Lilly & Co.*, 2016 WL 1643315 at *1 (E.D. Tex. 2016) (quoting *Skinner v. Switzer*,

562 U.S. 521, 530 (2011)).  When considering a motion to dismiss for failure to state a claim

under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must assume that all well-

pleaded facts are true and view those facts in the light most favorable to the pleading party.

*Bowlby v. City of Aberdeen*, 681 F.3d 215, 218 (5th Cir. 2012).  The court may consider "the

complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The court must then decide whether those facts state a claim for relief that is plausible on its face. *Bowlby*, 681 F.3d at 217. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the [other party] is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citations omitted). The Supreme Court explained in *Iqbal* that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Id*.

## B.   PLEADINGS NECESSARY TO STATE INEQUITABLE CONDUCT

In *Therasense, Inc. v. Becton, Dickinson & Co*., 649 F.3d 1276 (Fed. Cir. 2011) (*en banc*), the Federal Circuit heightened the standard to prove inequitable conduct, and required the accused infringer to "prove ... by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Id*. at 1290. Moreover, the Court imposed a "but-for" standard of materiality, i.e., an omission or misrepresentation is "but-for materiality," which means that "the PTO would not have allowed a

claim had it been aware of the undisclosed prior art." *Therasense*, 649 F.3d at 1291-92.  Finally, the accused infringer must "prove that the patentee acted with the specific intent to deceive the PTO." *Id.* at 1290.

The Federal Circuit again reiterated the "but for" materiality requirement in *In re Rosuvastatin Calcium Patent Litigation*, 703 F.3d 511, 519 (Fed. Cir. 2012): "[t]o establish materiality, it must be shown that the PTO would not have allowed the claim but for the nondisclosure or misrepresentation."  *See generally*, *Barry v. Medtronic, Inc.*, 2016 WL 3583620 at *5 (E.D. Tex. 2016).

The sufficiency of inequitable conduct claims is governed by Federal Circuit law, which requires particularity in accordance with Fed.R.Civ.P. Rule 9(b). *Exergen Corp. v. Wal-Mart Stores*, 575 F.3d 1312, 1326-27 (Fed. Cir. 2009).  "A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)." 575 F.3d at 1326-27.

> A charge of inequitable conduct based on a failure to disclose will survive a motion to dismiss only if the plaintiff's complaint recites facts from which the court may reasonably infer that a specific individual both knew of invalidating information that was withheld from the PTO and withheld that information with a specific intent to deceive the PTO.

*Delano Farms Co. v. California Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (citing *Exergen v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1318, 1330 (Fed. Cir. 2009); and *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc)).

As one Court noted, "as made clear in *Therasense*, courts must take an active role in examining the propriety of inequitable conduct claims," and "without incorporating allegations of the specific elements to be proven on the merits at the pleading stage, albeit at a lower standard of plausibility at this initial juncture, courts cannot perform this function." *Pfizer Inc. v. Teva Pharmaceuticals USA, Inc.*, 803 F. Supp.2d 409, 432 (E.D. Va. 2011).  Namely, the Federal

Circuit has plainly charged the district courts with policing charges of inequitable conduct that the Federal Circuit characterized as a "common litigation tactic," and as having "plagued not only the courts but also the entire patent system." *Therasense,* 649 F.3d at 1289.

## C.      LAW GOVERNING MOTIONS TO STRIKE AFFIRMATIVE DEFENSES

Fed.R.Civ.P. Rule 12(f) provides that a party may move to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "This rule creates a clear mechanism for the Court to save time and expense by eliminating insufficient defenses from the pleadings when those items lack merit or are otherwise unavailing." *Twin Rivers Engineering, Inc. v. Fieldpiece Instruments, Inc*., Case 2:15-cv-01838-JRG, Order dated April 6, 2016 (*see* Exhibit 1) ("*Twin Rivers*") (citing *Operating Eng'rs Local 324 Health Care Plan v. G&W Const. Co*., 783 F.3d 1045, 1050 (6th Cir. 2015)).

Although motions to strike affirmative defenses are generally disfavored, affirmative defenses are pleadings subject to the requirements of Rules 8 and 9, and "a Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law." *Twin Rivers, supra,* at p. 2, quoting *Kaiser Aluminum v. Chem. Sales, Inc*., 677 F.2d 1045, 1057 (5th Cir. 1982).  *See also Heller Fin., Inc. v. Midwhey Powder Co., Inc*., 883 F.2d 1286, 1294 (7th Cir. 1989).  Affirmative defenses must give plaintiff "fair notice of the defense," and may not be "mere denials of an element of the plaintiff's prima facie case." *Twin Rivers, supra* (citing *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999); *F.T.C. v. Think All Pub. L.L.C*., 564 F. Supp. 2d 663, 665–66 (E.D. Tex. 2008)).

## III.  ARGUMENT

## A.      THE INEQUITABLE CONDUCT CLAIMS ARE INSUFFICIENT

"[I]nequitable conduct counterclaims and affirmative defenses of inequitable conduct rise or fall together." *Medline Indus., Inc. v. C.R. Bard, Inc*., 2016 WL 5871501 at *3 (N.D. Ill.

2016); *Senju Pharm. Co. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 306 (D. Del. 2013).  Trend Micro's IC Claims are deficient under the governing law of *Therasense*, *Exergen* and *Delano Farms.*

Trend Micro's IC Claims span 57 paragraphs over 18 pages (repeated twice as an Affirmative Defense and as the 13th Counterclaim).  Multiple images and documents are reproduced or attached.  The vast array of words and images only mask the plain fundamental deficiencies of the pleadings, and Trend Micro fails to state any claim for inequitable conduct as a matter of law.

**1.    Trend Micro Has Not Plausibly Pled, and Cannot Plead, "But For Materiality" of the Pre-Critical Date Version of SysUpdate[tm]**

Trend Micro accuses the inventors of failing to disclose to the PTO that they had been allegedly offering for sale various computer products that allegedly embodied the inventions before the July 1, 2002 "critical date."  Yet, Trend Micro fails to demonstrate that any of the products allegedly offered for sale actually embodied the inventions claimed in the Patents.  Accusations of fraud should not be made lightly and Trend Micro's pleadings demonstrate only a disregard for the good name of the inventors, and Trend Micro's legal obligations in accusing the inventors and their counsel of committing fraud.

Trend Micro's IC Claims repudiate the basic fact that all computer products are regularly enhanced and updated with new code and capabilities.  For example, no one would suggest that the Microsoft Windows of 1985 is the same product as Windows today; and Trend Micro's Deep Security 7.0 is not the same product as its later version, Deep Security 9.6.  Yet, Trend Micro ignores this basic fact, and conflates entirely different products simply because they have the same name.  Prior art and invalidity determinations are based on substance and not commercial labels as Trend Micro erroneously asserts.

Trend Micro's IC Claims must be dismissed, because they fail to comport with the basic

principle that "neither mere nondisclosure of prior art references to the PTO nor failure to

mention prior art references in an affidavit constitutes affirmative egregious misconduct."  The

IC Claims are fatally deficient, because they fail to plausibly plead the basic *Therasense*

requirement that an inequitable conduct challenge must demonstrate "but-for materiality." 649

F.3d at 1292-93.  Where such "but for materiality" is not reasonably supported, a claim of

inequitable conduct must be dismissed.  *Red Carpet Studios v. Midwest Trading Grp., Inc.*, 2016

WL 5661681 at *6 (S.D. Ohio, 2016).

Trend Micro has not plausibly pled "but for materiality," because Trend Micro never

addresses the actual substance of any of the prior art.  At no point does Trend Micro plausibly

plead that the allegedly withheld prior art embodied the <u>claimed</u> inventions.  If the prior art does

not actually include the elements of the Patent claims, then there can be no "but for materiality."

"To sufficiently plead materiality, *Exergen* requires the pleadings 'to identify which

claims, and which limitations in those claims, the withheld references are relevant to, and where

in those references the material information is found–i.e., the 'what' and 'where' of the material

omissions.'" *Mosaid Techs. Inc. v. Freescale Semiconductor, Inc*., 2012 WL 12898419, at *4

(E.D. Tex. 2012).  That requires specifically pleading that the claim limitations are found in the

prior art:

> However, NVIDIA and Freescale's pleadings do not include which specific claim
> limitation(s) of the '811Patent the PowerMizer feature practices. *Id.* at 29.
> Accordingly, while NVIDIA and Freescale sufficiently pled the "what" and
> "where" requirements for the '885 Patent, they do not sufficiently pled the "what"
> and the "where" requirements for the '811 Patent.

*Mosaid*, *supra*.

Trend Micro has not made and cannot plausibly plead that the alleged prior art meets the

limitations of the Patent claims.  For example, at ¶180, Trend Micro extensively quotes from

what Trend Micro describes as "a publicly available webpage entitled "What is Anti-Vulnerability[TM] Technology?" that discussed the capabilities of SysUpdate and the Anti-Vulnerability Technology," and at ¶181, Trend Micro adds that "By at least April 5, 2002, SecurityProfiling's website described SysUpdate and Anti-Vulnerability Technology as 'complete and fully capable,'" and at ¶¶182-83, Trend Micro adds that "[o]n information and belief, SysUpdate and the Anti-Vulnerability Technology (especially because SysUpdate utilizes the technology) were commercially available before the critical date."  All these pleadings can be accepted as true, but yet they do not validly plead inequitable conduct, because there is no plausible allegation, as there could not be, that the PTO would not have issued the Patent claims "but for" the alleged suppression of the above prior art.

Trend Micro could not validly plead such "but for" materiality for two reasons.  First, the text quoted at ¶180 demonstrates that the product described in the article provided only automatic patching:  "offloads the tedious, manual functions of researching, downloading, deploying, installing, validating, and finally documenting updates."  Nowhere in the statement quoted in ¶180 is there any suggestion that the then-existing product met the Patent claims.  For example, the article does not show that the product then had the capability, as required by claim 1 of the '431 Patent of "identifying a **plurality** of mitigation techniques that mitigate effects of attacks that take advantage of vulnerabilities." (emphasis added).

Similarly, Trend Micro's Exhibit K, a press release dated July 1, 2002, refers only to patching: "SysUpdate[TM] researches, downloads, deploys, installs, validates, and documents the installation of necessary patches, thereby proactively protecting the network."  Nothing in Exhibit K refers to, or even suggests, the structures or functions described in the Patent claims.

Ultimately the implausibility of Trend Micro's IC Claims is exposed by comparing Exhibits B and E attached to Trend Micro's Answer.  The two exhibits are also attached here for

ease of reference.  Exhibit B is the paper entitled "What is Anti-Vulnerability™ Technology?" as it was published, according to the Internet Archive, on April 5 and August 8, 2002.  Exhibit E-2 is a paper having the same title, but is from about January 2003. (*see* Declaration of George Pazuniak, Exhibit 2).  There is a significant difference between the two versions of the "What is Anti-Vulnerability™ Technology?", demonstrating the significant change in the "Anti-Vulnerability™ Technology" between April/August 2002 and about January 2003.  Thus, the January 2003 version now describes far more features and functionality than the prior description.  For example, Trend Micro's Exhibit E at pp. 4 and 6 include the same Figures that are now Figures 5B and 6 of the '431 Patent, but which were entirely missing in the pre-critical date description of the Anti-Vulnerability™ Technology.

Under no stretch of plausibility can Trend Micro plead that any of the SecurityProfiling products remained unchanged from the date before the critical date to the date when SecurityProfiling published the various descriptions of its systems in the months after the critical date.  There is no factual support for such a conclusion, and Trend Micro's own Exhibits to the Answer demonstrate major changes in the products between pre-critical date time, and the time after the critical date.  Merely pointing out that both sets of products had the same name, without considering the version of the products, is not a plausible pleading.  Certainly, nothing in Trend Micro's pleadings plausibly suggests that the pre-critical date products embodied the claimed inventions.

> **2.      Trend Micro Has Not Plausibly Pled, and Cannot Plead, "But For" Materiality of the Pre-Critical Date Version of LogBoss™**

Trend Micro cites another product, LogBoss, at ¶¶187-196, but never pled any relationship between LogBoss and any claim in any of the Patents.  Trend Micro has not pled

that "but for" the inventors' alleged withholding of the LogBoss information, the PTO would not have allowed the Patent claims.

> ### 3.  Trend Micro Has Not Plausibly Pled, and Cannot Plead, "But For Materiality" of the Alleged Misleading Submission

Trend Micro asserts at ¶¶ 197-205 that the inventors' counsel had submitted an Internet Archive copy of a page that purported to reflect the website's "News," and dated the page as "July 2001," and which is attached to the Answer as Exhibit N.  Trend Micro asserts that the page was actually dated December 9, 2002.

It appears that whoever typed the description of the document on the disclosure statement had included the "July 2001" copyright date at the bottom of the page, Exhibit N, rather than the actual date of the document.  At the same time, Exhibit N also reflects the "December 9, 2002" date at the top of the page, clearly showing that the page was found on a December 9, 2002 copy of the Internet Archive.

Whatever the facts, however, Trend Micro's inequitable conduct assertion is frivolous in the extreme.  If a document is dated "July 1, 2002," then the document is prima facie prior art, because it is before the critical date, and, if the document is dated December 9, 2002, then the document is after the critical date.  Thus, dating the submission as "July 2001" implied that the submission was far more material than it actually was.  How that error can reflect "but for" materiality or support a conclusion that the inventors or their attorneys had intended to deceive the PTO remains a mystery.

In any event, Trend Micro has not pled, and cannot plead, how any material allegedly hidden, secreted or withheld can meet the *Therasense* standard that an applicant's actions in the PTO are material for inequitable conduct purposes only if "but for" the act or omission the PTO would have issued the Patent claims.

**4.     Trend Micro Has Not Plausibly Pled, and Cannot Plead, "But For" Materiality of the Alleged Misleading Submission**

Trend Micro asserts at ¶¶ 206-210 that the inventors committed fraud when they submitted an October 2002 document, stating that "document "was eventually distributed under the trade name 'AntiVulnerability Technology.' *See* Exhibit C at 1-4." Trend Micro asserts that "SecurityProfiling marketed technology under the trade name Anti-Vulnerability Technology before July 1, 2002." (¶208). But, as noted above, even if the inventors had marketed a product by that name, the issue is irrelevant, because Trend Micro's own Exhibits B and E demonstrate that the July 1, 2002 product was not the same as the later products, even if they were sold under the same generic name.

Without any plausible pleading that the July 1, 2002 product was the same as the product described in the October 2002 white paper, Trend Micro's allegations are insufficient to plead a plausible case of inequitable conduct.

**5.     Trend Micro Has Not Plausibly Pled, and Cannot Plead, "But For" Materiality" or Intent to Deceive**

Trend Micro asserts at ¶¶ 211-218 that the above alleged non-disclosure and declaration were "material information," and the inventors intended to deceive.   All the allegations turn on the erroneous assumption that SecurityProfiling pre-critical date products were the same as the products marketed after the critical date and described in post-critical date documents.  No pleading plausibly supports that conclusion (and it is a false conclusion).  Trend Micro's allegations have no more plausibility than asserting that all versions of Microsoft Windows operating systems are the same, because they are called "Windows" and "Windows" has been a registered trademark of Microsoft.

Thus, Trend Micro has not plausibly pled the correlation between what Trend Micro identifies as the prior art and the claims of the Patents, and, thus, has failed to plead any "but for"

materiality.  Trend Micro has merely pleaded that certain products offered for sale by the

inventors prior to the critical date have the same name as products sold later, but not that the

products were unchanged or that any products sold or offered for sale prior to the critical date

incorporated the claimed inventions.

## B.    TREND MICRO'S INVALIDITY CLAIMS ARE INSUFFICIENT

Various courts have held that patent invalidity claims must be supported by more than

bare-bones legal conclusions devoid of any supporting factual allegations.  *EMC Corp. v. Zerto,*

*In*c., 2014 U.S. Dist. LEXIS 104520 at *7 (D. Del. 2014); *Senju Pharm. Co., Ltd v. Apotex, Inc.,*

921 F. Supp. 2d 297, 303 (D. Del. 2013) ("[T]he pleading standards set forth in *Twombly* and

*Iqbal* apply to counterclaims of invalidity."*); Tyco Fire Prods. LP v. Victaulic Co.,* 111 F. Supp.

2d 893, 898 (E.D. Pa. 2011) ("In the wake of *Twombly* and *Iqbal*, it is clear that a[] counterclaim

must set forth sufficient facts to give rise to a plausible claim for relief").

Here, the totality of Trend Micro's Invalidity Claims is the single uninformative assertion

that:

> one or more of the claims of the … Patent are invalid for failure to meet the
> requirements of Title 35, United States Code, including but not limited to Sections
> 101, 102, 103, 112, and/or 116 thereof, and the rules, regulations, and laws
> pertaining thereto.

Thus, Trend Micro commingles in a single phrase the disparate principles such as patent

ineligibility, anticipation, obviousness, claim definiteness, adequacy of disclosure, best mode,

and inventorship, and references not only the patent statutes but undefined rules, regulations and

"laws pertaining thereto."

Trend Micro's Invalidity Claims provide less detail than the deficient counterclaims

dismissed in *EMC* and *Senju*.  Trend Micro's conclusory allegations do not even contain the

"threadbare recitals of the elements of the cause of action," which the Supreme Court has held

are insufficient. *Iqbal*, 556 U.S. at 678.  Courts have specifically struck invalidity claims that are essentially identical to the Trend Micro's allegations.  Thus, in *RAH Color Techs. LLC v. Ricoh USA Inc.*, 2016 WL 3632720 at *4 (E.D. Pa. 2016), the Court considered a pleading that read:

> The claims of the [Asserted Patent] are invalid for failure to satisfy one or more of the conditions for patentability specified in Title 35 of the United States Code, including but not limited to §§ 101, 102, 103, 112, and 132.

The Court struck these pleadings, holding that they were "substantively indistinguishable from those that were deemed insufficient under *Twombly/Iqbal*" in various other cases and plainly fell short of the T*wombly/Iqbal* pleading standard.

Trend Micro has not provided Plaintiff with notice as to why any of the claims of the Patents are allegedly invalid.  The Court cannot accept as true any facts relating to the invalidity of these other claims, as it must under a Rule 12(b)(6) analysis, because Trend Micro has alleged no facts relating to the invalidity of these claims.  As such, Trend Micro's Invalidity Claims fail to either "raise a right to relief above the speculative level" or "state a claim that is plausible on its face." *Twombly*, 550 U.S. at 555, 570.

## C.    TREND MICRO'S INFRINGEMENT CLAIMS ARE INSUFFICIENT

Trend Micro does not have to detail a denial of infringement.  However, the situation changes when Trend Micro affirmatively seeks a declaratory judgment that it does not infringe. A counterclaim for non-infringement is indistinguishable from any other claim, and must comply with Rule 8 and the standards following *Twombly/Iqbal*.

In *RAH Color Techs. LLC v. Ricoh USA Inc.*, 2016 WL 3632720 at *5 (E.D. Pa. 2016), the Court considered a pleading that read:

> Ricoh has not infringed and does not infringe, either directly, indirectly, contributory [sic], or by inducement, any valid and enforceable claims of the [asserted] patent either literally or under the doctrine of equivalents, willfully, or otherwise.

The Court struck these pleadings, because "[a]pplying *Twombly* and *Iqbal* to Defendant's noninfringement counterclaims … we find those counterclaims lack the plausibility and particularized facts required to sufficiently state a claim for relief." (*Id.*).  *See also Tannerite Sports, LLC v. Jerent Enterprises, LLC*, 2016 WL 1737740 at *5 (D. Or. 2016) ("the Court finds defendant has not alleged sufficient facts that when taken as true, support a reasonable inference defendant did not sell or offer to sell a product that had no substantial non-infringing use. Defendant's non-infringement counterclaim again leaves the Court to guess which facts support its claim for relief, as detailed factual allegations remain absent from the pleading").

## D.    TREND MICRO'S OTHER DEFENSES MUST BE STRICKEN

The *Twombly/Iqbal* plausibility pleading requirements apply to affirmative defenses. There can be no other logical conclusion.  *See*, for example, *Twin Rivers*, *supra*.  The issue was fully analyzed in one recent decision, *Hayden v. United States*, 147 F. Supp. 3d 1125, 1129–31 (D. Or. 2015), which is complete and dispositive of the issue.  After explaining why affirmative defenses are subject to the requirement of *Twombly/Iqbal*, the Court noted considerations that are fully applicable here:

> Lastly, the policy underlying *Twombly* and *Iqbal's* plausibility requirement applies with equal force to defenses.  The Supreme Court recognized that tightening notice pleading to require plausibility serves an important gate-keeping function by cutting off vague or even frivolous claims early, thus avoiding the time and expense of unnecessary or far-ranging discovery.  Discovery on affirmative defenses such as promissory estoppel and novation, for example, can be every bit as costly and time-consuming, and fact-intensive, as discovery on plaintiffs claim for breach of contract. "Applying the standard for heightened pleading to affirmative defenses serves a valid purpose in requiring at least some valid factual basis for pleading an affirmative defense and not adding it to the case simply upon some conjecture that it may somehow apply."  Applying a heightened to affirmative defenses also "weed[s] out the boilerplate listing of affirmative defenses which is commonplace in most defendants' pleadings where many of the defenses alleged are irrelevant to the claims asserted."  Plaintiffs are entitled to the same level of plausibility in a defense as defendants are to a claim for relief; doing so ensures plaintiffs will not be put to unnecessary time and expense pursuing needless discovery.

*Hayden, supra* (internal citations omitted).  *See also  Palmer v. Oakland Farms, Inc.*, 2010 WL 2605179 at *5 (W.D. Va. 2010) ("[T]he considerations of fairness, common sense and litigation efficiency underlying *Twombly* and *Iqbal* strongly suggest that the same heightened pleading standard should also apply to affirmative defenses."); *HCRI TRS Acquirer, LLC v. Iwer*, 708 F. Supp. 2d 687, 691 (N.D. Ohio 2010) (concluding that "[t]he underlying rationale used by the Supreme Court [is] a justification for extending the holdings of Twombly and Iqbal to affirmative defenses"); *Vogel v. Huntington Oaks Del. Partners, LLC*, 291 F.R.D. 438, 440-42 (C.D. Cal. 2013) (applying *Twombly* and *Iqbal* to affirmative defenses); *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1172 (N.D. Cal. 2010) (same).

In addition to the defenses considered with the prior analysis of the IC Claims, Invalidity Claims and Infringement Claims, the other deficient affirmative defenses in Trend Micro's Answer are considered below:

First Affirmative Defense:  "The Complaint fails to state a claim against Defendants upon which relief can be granted." (¶ 48).  This is not a defense, but a motion that the Complaint fails to state a cause of action, and which is properly presented under Rule 12(b)(6).  As analyzed by one Court, "[f]ailure to state a claim is not an affirmative defense, rather it is an assertion of a defect in a plaintiff's prima facie case" and such a defense is properly stricken.  *J & J Sports Prods., Inc. v. Angulo*, 2015 WL 5020725 at *2 (E.D. Cal. 2015).

Sixth Affirmative Defense:  "On information and belief, the relief sought by SecurityProfiling is barred … by the failure to mark, by SecurityProfiling or by one or more parties licensed or otherwise authorized to practice the Asserted Patents…." (¶ 54).  Trend Micro is required to identify the products that were allegedly not marked, and plead the reason that the product should have been marked.

Eighth Affirmative Defense:  Trend Micro appears to be asserting a hypothetical that Plaintiff might not have standing to sue for infringement of patents owned by the Plaintiff. (¶ 54).  Trend Micro is plainly trying to state the defense in hypothetical terms.  However, if Plaintiff had no standing to sue, then the proper process would be to file a motion to dismiss, because then the Court has no subject matter jurisdiction, and no Article III jurisdiction.

Ninth Affirmative Defense:  Trend Micro asserts "SecurityProfiling's claims for relief are barred in whole or in part by express or implied license." (¶ 58).  The defense must be stricken, because Trend Micro does not identify the sources of any express or implied license, nor do they provide the source or basis for the defense in short and plain terms.  For example, in *Twin Rivers*, the Defendant had provided a basis for the defense, by pleading that "Plaintiff continued to supply components to Defendant or its authorized vendors after the termination of the underlying business agreement, and that such conduct gave rise to an implied or downstream license." *Twin Rivers*, *supra*, at p. 3.

Tenth Affirmative Defense: Trend Micro asserts "SecurityProfiling's claims for relief are barred in whole or in part by the doctrine of patent exhaustion." (¶ 59).  This defense must be stricken, because Trend Micro does not identify the sources of patent exhaustion, nor do they provide the source or basis for the defense in short and plain terms.

Eleventh Affirmative Defense:  Trend Micro asserts that "SecurityProfiling's claims against Defendants regarding the Asserted Patents are barred, in whole in part, by the equitable doctrines of waiver, estoppel, claim preclusion, laches, and/or unclean hands." (¶ 60).  Trend Micro conflates multiple equitable defenses, without providing the source or basis for the defense in short and plain terms.  In *Twin Rivers*, the Court struck a similarly-worded affirmative defense, stating:

This broad and generic recitation of equitable defenses does not recite any facts as to how Plaintiff's conduct gives rise to any of such defenses.  While the Court acknowledges that "in some cases, merely pleading the name of the affirmative defense . . . may be sufficient," Defendant's Answer "falls well short of the minimum particulars needed to identify the affirmative defense in question."

*Twin Rivers*, *supra* at pp. 2-3 (citing and quoting *Woodfield v Bowman*, 193 F.3d 354, 362 (5th

Cir. 1999)).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff SecurityProfiling respectfully requests that this Court

grant its Motion to Dismiss and to Strike.

Dated:  December 23, 2016

Respectfully submitted,

**BUETHER JOE & CARPENTER, LLC**

By:     */s/ Christopher M. Joe*
      Christopher M. Joe
      State Bar No. 00787770
      Chris.Joe@BJCIPLaw.com
      Michael D. Ricketts
      State Bar No. 24079208
      Mickey.Ricketts@BJCIPLaw.com

      1700 Pacific Avenue
      Suite 4750
      Dallas, Texas 75201
      Telephone:     (214) 466-1272
      Facsimile:     (214) 635-1828

*Of Counsel:*

Sean T. O'Kelly (DE No. 4349)
George Pazuniak (DE No. 478)
Daniel P. Murray (DE No. 5785)
O'Kelly & Ernst, LLC
901 N. Market Street, Suite 1000
Wilmington, Delaware  19801
(302) 778-4000
(302) 295-2873 (facsimile)
sokelly@oeblegal.com
gp@del-iplaw.com
dmurray@oeblegal.com

Thomas F. Meagher
Alan Christopher Pattillo
Meagher Emanuel Laks Goldberg & Liao, LLP
One Palmer Square
Suite 325
Princeton, NJ 08542
(609) 454-3500
tmeagher@meagheremanuel.com
cpattillo@meagheremanuel.com

      **ATTORNEYS FOR PLAINTIFF**
      **SECURITYPROFILING, LLC**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(c) on this 23rd day of December 2016.

*/s/ Christopher M. Joe*

Christopher M. Joe
